## Price v. Price
### Case No. 88CA99
### Mahoning County, (7th)
### Decided February 20, 1990
[Cite as 1 AOA 242]

*For Plaintiff-Appellee: Atty. Charles E. Dunlap, 700 Wick Building, Youngstown, Ohio 44503,*

*For Defendant-Appellant: Atty. Mark A. Huberman 204 Stambaugh Building, Youngstown, Ohio 44503.*

DONOFRIO, J.

This is an appeal from the Court of Common Pleas, Division of Domestic Relations, Mahoning County, Ohio.

This appeal concerns the judgment of the trial court denying the request of the mother, defendant-appellant, Deborah Denise Price, nka Deborah Denise Aloia, to move the parties' two minor children to California, and the judgment of the trial court granting the father, plaintiff-appellee, William Anthony Price, custody of the minor children.

On September 10, 1985, the parties in this case were granted a dissolution. The appellant was granted custody of the two minor children. Appellant and the children continued to live in Pittsburgh, Pennsylvania, where appellee had served his medical internship. Subsequent to his internship, appellee returned to the Youngstown area. Both parties were later married to other individuals.

Appellant is a registered nurse and her current husband was a service manager for a computer company. Appellant's husband was demoted by his employer and suffered a reduction in pay. Consequently, he applied for similar positions with other employers in Pittsburgh and across the country. Appellant's husband accepted a position in Burbank, California. Appellee is a psychiatrist who has a practice in the Youngstown area.

On March 27, 1987, appellant filed a motion with the trial court to permit removal of the children to Burbank, California. On April 7, 1987, appellee file a motion for change of custody, contending that it would be in the best interests of the children to reside with him.

The findings of fact and conclusions of law of the trial court, filed on May 4, 1988, state that the move to California deprives the children of close family contact, and that it would be in the best interest of the children that custody be transferred to appellee. The court cited the lack of candor on the part of appellant, the environmental dangers to the children's mental and emotional development by the move to California, and the hostility demonstrated by appellant toward appellee.

Appellant assigns four errors by the trial court, the first of which states:

"The trial court's judgment denying defendant appellant's motion requesting permission to remove the minor children herein from the state of Ohio and also granting appellee's change of custody motion is contrary to law, constitutes an abuse of discretion and is against the manifest weight of the evidence which failed to show that there was any significant danger to the children's physical, mental, moral or emotional development."

Appellant argues that an examination of the record below will expose an extraordinary absence of unbiased, competent or credible evidence in support of the court's denial of

appellant's motion to permit removal and appellee's motion for change of custody. Appellant claims that the trial court was clearly arbitrary and unreasonable and that the decision did not rest on the record before the court. Appellant states that there has been no showing in this case that removal will adversely affect the best interests of the children.

Appellant cites several cases which state that the act of moving out of state alone is not sufficient by itself to change custody to the in-state parent, among which is *Schmidt* v. *Schmidt* (1982), 7 Ohio App. 3d 175.

We recognize this principle, that moving out of state is not alone a sufficient change of circumstance to allow a court to change custody of the children to an in-state parent; however, it may be the ramifications of the move which could be of consequence and importance. The criteria for a change of custody are set forth in R.C. 3109.04(B) (1) and (C). That section, in pertinent part, reads:

"(B)(1) Except as provided in division (B)(2) of this section, the court shall not modify a prior custody decree unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his custodian, or either joint custodian, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the custodian or both of the joint custodians designated by the prior decree, unless one of the following applies:
"(a) The custodian or both joint custodians agree to a change in custody.
"(b) The child, with the consent of the custodian or of both joint custodians, has been integrated into the family of the person seeking custody.
"(c) The child's present environment endangers significantly his physical health or his mental, moral, or emotional development and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
"* * *
"(C) In determining the best interest of a child pursuant to this section, whether on an original award of custody or modification of custody, the court shall consider all relevant factors, including:
"(1) The wishes of the child's parents regarding his custody;
"(2) The wishes of the child regarding his custody if he is eleven years of age or older;
"(3) The child's interaction and inter-relationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
"(4) The child's adjustment to his home, school, and community;
"(5) The mental and physical health of all persons involved in the situation."

The trial court cited this section in its conclusions of law as well as the *Schmidt* case, *supra*. In *Schmidt*, the court stated, at 177:

"The removal of a child from the jurisdiction is a factor that may be considered if it adversely affects the best interests of the child to the extent set forth by R.C. 3109.04(B) (3). * * * Therefore, the removal of the child to Illinois does not *per se* require a change in custody * * *."

It, therefore, appears that the trial court was well aware of the criteria and statutory authority to be followed in the instant case. The trial court stated, in its opinion:

"After hearing the evidence in this case and making the above findings of fact, it is the opinion of this court that the children's present environment endangers significantly their mental and emotional development. That the children's present condition is the direct and proximate result of the removal of the children to California and the deprivation of the close family contact between the children and other family members. That the present family environment is unstable and reactionary which coupled with the open hostility demonstrated by the Defendant towards the Plaintiff have contributed to the present danger of the children. That the children have not adjusted to the move to California. That changing the custody of the children to the Plaintiff would be most beneficial and alleviate the present danger."

Appellant contends that there was no testimony offered at trial to suggest any danger, physically, morally, or environmentally to the

children while in the care of the appellant. Appellant criticized the fact that appellee, a psychiatrist, testified as a professional, giving his opinion on the effects of the move on his children. Appellee, as a father, noticed changes in his children. As a psychiatrist he noticed that these changes were detrimental to his children. Under this assignment of error, appellant claims error by the trial court for permitting the appellee to act as an expert witness. We find no error in this regard. Appellee's testimony was admissible. Thereafter, the question of the weight and credibility was for the finder of facts, the trial court, to apply and to assess, even in the absence of any professional testimony relative to this conclusion.

> "After a thorough review of R.C. 3109.04, we can find no language which *requires* that professional testimony be presented on the issue of the relative harm and advantages likely to be caused by a change in custody. In the absence of any statutory requirement for such testimony, the trial court is free to consider the facts which it deems to be relevant and to make those findings which in its sound discretion appear to be reasonable and in the best interest of the child." *Stone* v. *Stone* (1983), 9 Ohio App. 3d 6, 11.

In his testimony, appellee stated that the three-year-old daughter and five-year-old son began exhibiting certain anxieties during their time spent in California which he believed suggested a need for psychiatric help. He testified that he observed changes in his children immediately before and after their move to California. Appellee noted such changes as hair twirling and sock pulling by Matthew and a deterioration of speech by Nicole. Although appellant contends that appellee's testimony was not corroborated by a witness, this is not true. Appellant admitted that she did notice the hair twirling by Matthew. Dr. Harvey Kayne, expert witness for appellee, noted that Nicole has a verbal weakness. Although Dr. Kayne noted that Nicole had a verbal weakness typical of the average three-year-old, he could not say whether her speech had deteriorated because he had not examined her prior to her moving to California. Appellant also noted that she recognized some behavior quirks in Matthew after the move. Dr. Kayne's testimony confirms this. He noted that

Matthew was experiencing difficulties with the move. Further testimony of Dr. Kayne was much in favor of appellant's position. Dr. Kayne identified the mother as the primary caretaker and determined that a break-up of this relationship would have a far more destructive consequence for the children than the speculative problems that might arise out of any move to California.

Finally, under this assignment of error, appellant states that there were no shortcomings on the part of either parent nor was there anything but a positive and loving environment in the relationship for and towards the children. Appellant believes that the claim of mental and emotional endangering by the move to California is simply an invention on the part of appellee.

The trial court made extensive findings of fact and conclusions of law. Among the findings of fact are:

> "11. That the maternal and paternal relatives and family, as a majority, are located in the Mahoning County area;
> "12. That the minor children had frequent contact with maternal and paternal immediate family;
> "* * *
> "15. That the Plaintiff is a licensed psychiatrist in the State of Ohio, licensed 7/1/87;
> "16. That the minor children had frequent contact with maternal and paternal immediate family;
> "17. That the Plaintiff has noted behavior changes in the minor children since the move to California was made known;
> "18. That the Plaintiff has noted that Matthew has repeated incidents of twirling his hair, playing with his food and socks, outward aggression (sic) and dominance of Nicole, his minor sister, preoccupation with the fear of Santa Claus and the Easter Bunny not finding him, playing with his genitals, sexual language; to wit: Sigmund sucking Sherlock and asking Nicole (Nikki) to rub him;
> "19. That the Plaintiff has heard Matthew scream and shout that he did not want to go;
> "20. That the Plaintiff has observed Nicole become more passive and quieter. In addition, her vocabulary has lapsed;
> "21. That neither Defendant nor her new husband has observed any of this behavior

in the minor children;
"* * *
"23. That it was the professional opinion of the Plaintiff that the minor children's behavior was the result of a separation anxiety syndrome;
"24. That it was the Plaintiff's opinion that the proximate cause of the separation anxiety syndrome was the minor children's fear of being moved to California and leaving behind their families;
"25. That Harvey Kane (sic; all below), Ph.d (sic) was called as an expert on behalf of the Defendant;
"26. That Harvey Kane conferenced with the Defendant and the maternal grandmother and was not informed of any behavior problems on the part of the minor children. Harvey Kane observed the minor children twice;
"27. That Harvey Kane did observe a dominance of Nicole by Matthew and Nicole's poor speech;
"28. That Harvey Kane was familiar with a separation anxiety syndrome;
"29. That Harvey Kane did not believe this separation anxiety syndrome to be germane;
"30. That the within findings of fact have occurred since the original order of custody to the wife;
"31. That the Plaintiff has a good home environment for the children;
"32. That the Plaintiff has a good relationship with the children."

We find that the record supports the trial court's findings and judgment. Cases such as this involving custody matters are difficult cases. The decisions of the court affect the parties to the case, the children who are involved, the nuclear family, all of whom obviously love the children very much. Counsel for both parties in this case have done an excellent job in their briefs and in the presentation of their case, obviously, both sides emphasizing the strong points of the record favoring their clients. In *Thompson* v. *Thompson* (1987), 31 Ohio App. 3d 254, a child custody case in Washington County, the Fourth District Court of Appeals addressed the problem of a cold record presented to the Court of Appeals. Quoting from the opinion of the Ohio Supreme Court in *Trickey* v. *Trickey* (1952), 158 Ohio St. 9, the *Thompson* court stated at page 258:

"'In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is particularly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by [the] printed record. * * *'"

The court in *Trickey*, case, *supra*, stated in paragraph two of the syllabus:

"On appeal on questions of law only from an order fixing the custody of a minor child, the Court of Appeals may not substitute its judgment for that of the trial court as to what order of custody would be for the best interest of the child."

Appellant further argues that the evidence submitted to support the court's decision was neither competent nor credible. Appellant attacks the findings of fact and conclusions of law adopted by the court. Appellant argues that these findings represent a serious distortion of the record. Appellant argues against the various findings of fact in the same fashion as she does on the finding No. 27, which states that Dr. Harvey Kayne "did observe a dominance of Nicole by Matthew and Nicole's poor speech." Appellant argues that this is a deceptively narrow interpretation. Appellant continues to argue in this vein, and we quote from her brief:

"Finally, the concluding paragraphs of the 'Opinion' which seek to rest the Court's decision for Appellee on the basis of a 'lack of credibility' on the part of Appellant and her husband has clearly more to do with an effort by the Court to see its decision upheld on appeal than anything to do with the actual impression of the trial testimony."

In response, appellee states that the trial court found that the children's present environment in California endangers significantly their mental and emotional development. Appellee argues that the difficulties that the children are experiencing are the direct and proximate result of the removal of the children to California and the deprivation of the close family contact between the children and other family members.
We have reviewed the record in this case

and cannot say that the trial court did not conform his findings to it.

In the case of *Martin* v. *Martin* (1985), 18 Ohio St. 3d 292, the Ohio Supreme Court stated at page 295:

"While a reviewing court in any domestic-relations appeal must be vigilant in ensuring that a lower court's determination is fair, equitable, and in accordance with law, an appellate court must refrain from the temptation of substituting its judgment for that of the trier-of-fact, unless the lower court's decision amounts to an abuse of discretion."

As to what is meant by abuse of discretion, 5 Ohio Jurisprudence 3d 163, Appellate Review, Section 590, states:

"It is difficult to define exactly what is meant by 'abuse of discretion,' and practically impossible to lay down any general rule as to what it consists of, since it depends upon the facts in each particular case. As the term is ordinarily used, it has been said to imply not merely an error in judgment, but perversity of will, passion, or moral delinquency--that there was an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court."

Governed by the above authorities and statutes cited, we cannot say that the trial court abused its discretion or acted contrary to law.

We, therefore, overrule appellant's first assignment of error.

Appellant's second assignment of error states:

"The trial court abused its discretion by adopting as its findings of fact, conclusions of law and opinion, entries proffered by counsel for appellee containing language and reasoning that the court expressly stated to counsel for both parties was not to be a basis for its decision or a part of such entries."

Appellee's counsel was given the task of drawing up the appropriate judgment entries consistent with the court's views in this matter. Appellant protested to the trial court that the proposed findings of fact, conclusions of law and opinion were inaccurate and the trial court instructed that some of the language be changed. Appellant states that some changes were made but that, essentially, the language concerning Dr. Kayne's testimony was left intact. This language pertained to the hostility between the parties and the separation anxiety syndrome. Appellant points out that the trial court accepted the revised entries and signed them without further notice to counsel for appellant. Appellant argues that the entries adopted by the court do not reflect the evidence presented. Appellant argues that for the trial court to adopt these findings is both arbitrary and capricious and constitutes an abuse of discretion.

We find this assignment of error has no merit.

The proposed findings are adequately supported by the record. It is within the court's power to request proposed findings of fact and conclusions of law. In 90 Ohio Jurisprudence 3d 230-231, Trial, Section 578, it is stated:

"When a request for findings of fact and conclusions of law is made, the court in its discretion may require of any and all parties the submission of proposed findings of fact and conclusions of law, but it is not bound to find the facts to be as proposed by counsel, and only those findings and conclusions actually made by the court shall form a part of the record. The general practice is for counsel to prepare the findings. The presentation of an entry containing findings of fact may be considered by the trial judge as a proposal of such findings."

We overrule appellant's second assignment of error.

Appellant's third assignment of error states:

"The trial court erred and abused its discretion by in effect adopting as precedent, the standards of a New York case which places a heavy, if not insurmountable burden on the custodial parent to show 'exceptional circumstances' necessitating the removal of a minor child from the State of Ohio and then changing the custody of said child where the burden is not met."

Appellant claims that the domestic relations court of Mahoning County publicized the fact that it liked a decision from New York

captioned *Raul Q.* v. *Silvia S.* (1987), 13 FLR 1360, where not only was a relocation of children denied, but the custody of the child was changed from the natural mother to the putative father.

Appellant states that it is clear that the trial court has held parties seeking removal to a rigid burden to justify the removal, and in every case the burden has failed, the request for removal denied and custody changed.

The discussion under the first assignment of error applies equally as well to this assignment of error. All of appellant's arguments under this assignment of error are off the record and not supported by any evidence from the record before us. Appellant's arguments under this assignment of error are highly speculative from a reviewing court's point of view.

We overrule appellant's third assignment of error.

Appellant's fourth assignment of error states:

"The trial court erred and abused its discretion when it overruled appellant's motion seeking permission to remove the children then changed custody to appellee without first affording appellant the opportunity to withdraw such request."

Under this assignment of error, appellant argues that justice and common sense would mandate that if the trial court's concerns related primarily to the removal to California, then it should have denied the motion and left the decision to appellant as to whether or not she wished to go to California. If she had chosen to stay in this area, appellant argues that she should have been able to retain custody and restore the status quo.

Appellant did not attempt to withdraw the request for removal until after the hearings had ended and the trial court had made its decision. The trial court heard evidence on both motion simultaneously, i.e., the motion for removal and the motion for change of custody. The trial court identified that the main issue is the best interest of the children and proceeded to determine that issue. The trial court was justified in combining both motions in the interest of judicial economy and fairness.

We overrule appellant's fourth assignment of error.

For the foregoing reasons we accordingly affirm the judgment of the trial court.

*JUDGMENT AFFIRMED*

O'NEILL, P. J., Concurs.

COX, J., Dissenting:

We as a reviewing court are well aware of the standard that we do not substitute our judgment for that of the trier of facts absent an abuse of discretion as stated in the majority opinion.

But if there was ever a case that cried for reversal, this is the one.

All the custodial parent did was make a motion for permission to move out of State. Had she not made that request she would not have lost her children.

If the non-custodial parent had filed for change of custody, because he observed that a 3 year old speech pattern was slow and a 5 year old boy twirled his hair and played with his socks and food, he would have been thrown out of court.

The trial court allowed the non-custodial parent to testify as to his observations of the children that were well and good. Here, however, the trial court allowed this parent to go one step further. He was now permitted to give an expert opinion as to why the children were acting the way they did. He was permitted even further latitude to give this behavior pattern a title, that being "Separation Anxiety Syndrome." Then he was permitted to go even further and state that this Separation Anxiety Syndrome was caused by the children's fear of being moved to California.

There is no other evidence in this case, no child abuse, no economic hardship, and no custodial parental lack of supervision.

Everyone, child, parent, or sibling, experiences a separation syndrome when there is a pending separation. Ask any parent whose child has left home to go to college, to the service, get married, and these are relatively adult children; ask any child in the same position, as stated, and they will tell of suffering a "separation syndrome."

To give this behavior some kind of legal weight sufficient to take the children from their mother is not only bad law but morally wrong and an abuse of discretion of the first magnitude.

Thirty percent of our population in the United States move every year. Are the courts to interview every child to see if this causes any anxiety, and, if it does, take them from their parents?

I would reverse and give final judgment for the appellant in this case, forthwith.