OPINION
{¶ 1} This is an accelerated calendar case, submitted to this court on the record and the brief of appellant, Ruth A. Rosebrugh. Appellee, Robert R. Rosebrugh, did not file a brief. Appellant is appealing the judgment entered by the Ashtabula County Court of Common Pleas, Domestic Relations Division. The trial court's judgment changed the residential parent of the parties' daughter from appellant to appellee.
 {¶ 2} The parties were married in 1984. They had one child together during the marriage, Kristin. Kristin was born on October 27, 1986. At the time of the hearing in the instant matter, she was fifteen years old.
 {¶ 3} The parties were divorced in 1996. In the final divorce decree, there was a shared parenting plan, which was agreed to by the parties. Appellant was named the residential parent. Essentially, the shared parenting plan provided that Kristin would spend half of her time with each parent. Due to the fact that each parent was to have Kristin fifty percent of the time, the court did not issue a support order. Rather, each parent was responsible for the care of Kristin when she was in their respective custody.
 {¶ 4} Apparently, the parties did not follow a structured arrangement for splitting Kristin's time. As time progressed, Kristin spent significantly more time with appellant. As a result, appellee was not providing equal support, since appellant was responsible for supporting Kristin when she was in her home. However, appellee did provide half of the price of any clothing Kristin purchased when she asked him for it. This money was provided directly to Kristin.
 {¶ 5} In March 2000, in an attempt to get a support order requiring appellee to pay child support, appellant filed a motion to modify and terminate the shared parenting plan. Thereafter, appellee also filed a motion to terminate the shared parenting plan, wherein he requested that he be designated the residential parent and legal custodian.
 {¶ 6} Appellee also moved the court to order a family investigation report. The trial court granted this request and ordered the parties to split the cost of the investigation.
 {¶ 7} A hearing was held on the motions to terminate the shared parenting plan in November 2001. The following evidence was presented at the November 2001 hearing.
 {¶ 8} Appellee currently resides at 1421 Sherman Street in Geneva, Ohio. This was the marital residence that the parties lived in prior to their divorce. It is a split-level, three-bedroom house. Appellee lives there with his female companion, Kathy Williams ("Kathy"), and her eight-year-old son. Appellee testified that Kristin would have her own bedroom if she were placed with him. This would be the same bedroom Kristin had when she was younger.
 {¶ 9} Appellee had been seeing Kathy for five years. Kristin stated that she did not get along with Kathy. When asked by the court why she did not get along with Kathy, Kristin gave several reasons, including: an incident when Kristin was not permitted to do her own laundry and an incident when Kathy remade Kristin's bed after Kristin went to school. Also, Kristin stated she did not like Kathy because she was picky.
 {¶ 10} Appellee works a variety of jobs. He is a postal worker with the United States Postal Service. He testified that he has several rental properties in the area. In addition, he receives minimal compensation for his service as a Geneva City Councilman.
 {¶ 11} Appellant lives at 342 West Liberty Street, also in Geneva, Ohio. This was originally a two-bedroom house, but the basement has been converted into a third bedroom. At the time of the hearing, appellant lived in the home with Kristin, her other daughter, Melissa, and Melissa's two children, an eleven-year-old boy and a fourteen-month-old baby. In addition, the father of Melissa's youngest child would sometimes spend the night. Appellant testified that she would occasionally sleep with Kristin in her bed, because she did not like sleeping downstairs.
 {¶ 12} Appellant stated that she had a relationship with a male companion named Robert Kotnik ("Mr. Kotnik"), whom she considered a friend at the time of the hearing. Appellant testified that Mr. Kotnik has a mental health problem. In addition, he was arrested five times for assault and menacing. Appellant acknowledged that Kristin does not like Mr. Kotnik. However, she still permitted him to come over and spend the night. She did testify that in the year prior to the hearing, Mr. Kotnik did not spend the night when Kristin was there. Mr. Kotnik was in jail at the time of the hearing.
 {¶ 13} Appellant testified that she earns nearly $20 per hour as a registered nurse at Geneva Memorial Hospital. In addition, she works a lot of overtime. Despite this salary, appellant has also had problems keeping up with financial obligations. She has had two vehicles repossessed in the past five years. As a result, she would rely on Melissa's vehicle to transport Kristin to various activities. In addition, her gas was shut off due to non-payment. Finally, phone service to her residence has been cut off at least two or three times.
 {¶ 14} Although appellant received the Liberty Street Property free and clear of any encumbrances pursuant to the divorce decree, she has taken at least one mortgage against the property. She has repeatedly failed to keep up with the payments. There have been three separate foreclosure actions filed by the bank against the property. The first two foreclosure actions were dismissed after appellant caught up on the arrearages. The final foreclosure action was still pending when the trial court issued its decision.
 {¶ 15} The trial court considered the fact that appellant had pled guilty to a charge of driving under the influence two years prior to the hearing. Also, the court noted that appellant failed to cooperate with the family investigation.
 {¶ 16} The court conducted an in camera interview of Kristin. Kristin stated that she was doing well in school and was on the volleyball team. Kristin indicated that she would prefer to live with her mother. However, the primary reason she gave in support of this preference was that she did not get along with Kathy.
 {¶ 17} The court determined there had been a change in circumstances since the parties' divorce and that any harm caused by a change was greatly outweighed by the best interests of Kristin. Therefore, the court named appellee the residential and custodial parent of Kristin.
 {¶ 18} Appellant raises four assignments of error on appeal. Appellant's first assignment of error is:
 {¶ 19} "The trial court abused its discretion in failing to consider all the relevant factors in deciding the allocation of parental rights and responsibilities."
 {¶ 20} A trial court is afforded wide latitude in determining whether a change in circumstances has occurred that warrants a change in the custody of minor children.[1] Accordingly, such a decision will not be reversed unless there is a showing of an abuse of discretion.[2]
"The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[3]
 {¶ 21} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 22} "* * *
 {¶ 23} "(iii) the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."[4]
 {¶ 24} "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 {¶ 25} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 26} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 27} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 28} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 29} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 30} "(f) The parent more likely to honor and facilitate court-approved parenting time rights and visitation and companionship rights;
 {¶ 31} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 32} "(h) [Not applicable];
 {¶ 33} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 34} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."[5]
 {¶ 35} Appellant argues that the trial court failed to consider Kristin's wishes. The trial court did consider Kristin's wishes. Kristin indicated that she would rather live with appellant. However, a review of the trial court's interview with Kristin reveals that Kristin's reasons that she did not want to live with appellee were that she did not like appellee's companion, Kathy, and that appellee's house "didn't feel like home." Although Kristin stated she preferred to live with appellant, the wishes of the child is only one of the many factors that a trial court is required to consider when making its determination.
 {¶ 36} The wishes of the child is an important factor in these types of cases. However, the wishes of the child are not always consistent with the court's determination of what is in the child's best interest. A child, especially a teenager, may prefer to live in a household where the rules are more relaxed. However, the trial court is concerned with the best interests of the child, including the child's safety. In the case sub judice, the trial court did not err by reaching a conclusion that was inconsistent with Kristin's wishes.
 {¶ 37} The trial court stated "[Kristin] has not gotten along well with her father's girlfriend, Kathy, in the past, however, if that continues to be a problem, the Court may order counseling." Appellant asserts that the trial court's statement that counseling may be needed indicates that Kathy has an adverse impact on Kristin. We disagree. The reasons Kristin stated for not getting along with Kathy were relatively minor, including that Kathy would not let her do her own laundry and would remake her bed after she had went to school. This relationship does not constitute an adverse impact.
 {¶ 38} Appellant contends that the court did not consider Kristin's adjustment to her home, school, and community. However, the court specifically found that Kristin would not have to change schools and would still live in the same community.
 {¶ 39} Appellant asserts that the trial court failed to consider appellee's failure to pay support. R.C. 3109.04(F)(1)(g) requires the court to consider whether a party has failed to make support payments pursuant to a child support order. There was not a child support order in this case. Therefore, appellee was not required to pay support.
 {¶ 40} Appellant argues that the trial court primarily focused on the parties' respective financial status when making its decision. The trial court did make references to the parties' financial situations. We note that a court "shall not give preference to a parent because of that parent's financial status or condition."[6] The trial court was addressing the financial decisions made by appellant and the adverse impact those decisions could have on Kristin. As a result of appellant's financial decisions, two of her vehicles had been repossessed, her home was at risk in a foreclosure action, and her utilities had been shut off on numerous occasions. Appellant's financial decisions were relevant factors, due to their potential adverse impact on Kristin.
 {¶ 41} The trial court considered all of the factors set forth by appellant in her first assignment of error. Thus, the trial court did not abuse its discretion. Appellant's first assignment of error is without merit.
 {¶ 42} Appellant's second assignment of error is:
 {¶ 43} "The trial court abused its discretion in failing to consider who has been the primary caretaker of the minor child."
 {¶ 44} The primary caregiver is not a codified factor of 3109.04(F). However, courts have held that this is a factor that a trial court may use when determining the best interest of the child.[7] As appellant correctly notes, this factor is not to be given any presumption over any other factor.[8]
 {¶ 45} Since the primary caregiver factor is not specifically codified under 3109.04(F), the trial court is only required to consider it as a relevant factor. Although it is not specifically mentioned in its judgment entry, it is clear that the court considered this factor. The court noted that Kristin would not have to change school systems or her school activities because of the judgment. The trial court also found that any harm caused by the termination of the shared parenting agreement would be greatly outweighed by the best interest of Kristin.
 {¶ 46} The trial court did not abuse its discretion by not discussing the primary care factor more thoroughly in its judgment entry. Appellant's second assignment of error is without merit.
 {¶ 47} Appellant's third assignment of error is:
 {¶ 48} "The trial court abused its discretion by its failure to apply the direct adverse impact test in considering appellant's lifestyle."
 {¶ 49} Appellant cites Rowe v. Franklin in support of the proposition that a parent's non-marital sexual conduct should only be considered to the extent that it has an adverse impact on the child.[9]
 {¶ 50} In the case sub judice, the trial court was not focusing on the relationship itself, but the impact that Mr. Kotnik had on Kristin. Kristin stated that she did not like him. According to appellant's testimony, Mr. Kotnik had mental health problems. The trial court is required to consider the mental health of all persons involved in the situation.[10] In addition to his mental health problems, appellant testified that Mr. Kotnik had been arrested several times for assault and menacing. Regardless of these facts, appellant still allowed him to visit her house.
 {¶ 51} The trial court did not abuse its discretion by considering the factors regarding Mr. Kotnik, as they could have a direct adverse impact on Kristin.
 {¶ 52} Appellant's third assignment of error is without merit.
 {¶ 53} Appellant's fourth assignment of error is:
 {¶ 54} "The decision of the trial court in designating appellee residential and custodial parent of the minor child is contrary to law and against the manifest weight of the evidence."
 {¶ 55} "`Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. * * *'"[11]
 {¶ 56} There was a substantial amount of competent, credible evidence to support the judgment of the trial court. This evidence included: appellant's D.U.I. conviction; the mental health problems of Mr. Kotnik; appellant's financial decisions, which placed Kristin at risk of being without fundamental necessities; and appellee's ability to provide a stable residence.
 {¶ 57} The trial court determined that changing the residential parent was in the best interest of Kristin. The evidence indicated that appellant's living arrangements presented some safety concerns for Kristin. Appellant admitted that she had been convicted of driving under the influence. She also maintained a relationship with an abusive individual and permitted him to visit her residence, despite the fact he had been arrested for violent crimes.
 {¶ 58} As the trial court's decision was supported by competent, credible evidence, we cannot say it was against the manifest weight of the evidence. Appellant's fourth assignment of error is without merit.
 {¶ 59} The trial court was in the best position to determine whether changing the residential parent was in the best interest of Kristen. We cannot say that the trial court abused its discretion by naming appellee the residential and custodial parent. The judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY, J., DIANE V. GRENDELL, J., concur.
[1] Davis v. Flickinger (1997), 77 Ohio St.3d 415, paragraph two of the syllabus.
[2] Id. at 418, citing Miller v. Miller (1988), 37 Ohio St.3d 71,74.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[4] R.C. 3109.04(E)(1)(a).
[5] R.C. 3109.04(F)(1).
[6] R.C. 3109.04(F)(3).
[7] See Kowalski v. Kowalski (May 6, 1988), 11th Dist. No. 1834, 1988 Ohio App. LEXIS 1784; and Thompson v. Thompson (1987),31 Ohio App.3d 254.
[8] Id.
[9] Rowe v. Franklin (1995), 105 Ohio App.3d 176.
[10] R.C. 3109.04(F)(1)(e).
[11] (Internal citation omitted.) Davis v. Flickinger,77 Ohio St.3d at 418, quoting Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus.