OPINION JUDGMENT ENTRY
{¶ 1} Appellant Abby Smith appeals the grant of permanent custody of her daughter by the Tuscarawas County Court of Common Pleas, Juvenile Division. The Appellee is the Tuscarawas County Department of Job and Family Services ("TCDJFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} On January 14, 2002, TCDJFS filed a complaint alleging that appellant's three children, David, James, and Mary Beth, were neglected and/or dependent. On February 13, 2002, appellant stipulated to a finding of dependency. Upon disposition, James was ordered into the temporary custody of TCDJFS, while David and Mary Beth were placed with appellant, with protective supervision by the agency. On December 18, 2002, however, David and Mary Beth were also ordered into the temporary custody of TCDJFS. On February 19, 2003, the court extended temporary custody of the three children to TCDJFS.
 {¶ 3} On August 27, 2003, TCDJFS filed a motion for permanent custody. TCDJFS filed an amended motion for permanent custody on December 29, 2003. An evidentiary hearing was conducted on January 8, 2004. The trial court, via judgment entry, thereafter ordered James and David into a planned permanent living arrangement ("PPLA"), and granted permanent custody of Mary Beth to TCDJFS.
 {¶ 4} Appellant timely appealed, and herein raises the following two Assignments of Error:
 {¶ 5} "I. The trial court committed reversible error by awarding permanent custody of the minor child, Mary Beth, to the tuscarawas county jobs and family services agency (JFS) absent clear and convincing evidence supporting such an award.
 {¶ 6} "II. It was against the manifest weight of the evidence and the juvenile court abused its discretion by terminating the custodial rights of appellant where appellant substantially completed the case plan requirements.
 I., II. {¶ 7} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 8} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 9} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 10} "(b) The child is abandoned.
 {¶ 11} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 12} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 R.C. 2151.414(B)(1)(a) Findings {¶ 13} In the case sub judice, the trial court first relied on R.C.2151.414(B)(1)(a) in reaching its permanent custody decision as to the child Mary Beth.[1]
 {¶ 14} During the evidentiary hearing, TCDJFS first called Dr. Ralendra Misra, who had conducted a psychological evaluation of appellant in October 2003. Dr. Misra opined that appellant's Axis I diagnosis was schizo-affective disorder, bipolar type, and that the Axis II diagnosis was deferred, with features of schizoid, narcissistic, and paranoid personality disorders. Tr. at 5-6. Dr. Misra also found that appellant's Axis V "global assessment of functioning" was 40 points on a 100-point scale, which "indicates major problems in several areas." Tr. at 6. Dr. Misra further summarized his concerns about appellant's provision of day-to-day care for a child without getting long-term treatment: "Uh, yes, I do, and based on the fact that she has never had any treatment, as she told me, for her emotional problems, uh, based on the fact that evidently she has not, I mean I'm not sure if she has followed through with my recommendations, seeking psychiatric treatment or individual therapy, um, I would be hesitant at this point recommending that, yes." Tr. at 9-10.
 {¶ 15} TCDJFS also called as a witness Steve Malik, a licensed professional counselor working with the family via a Boys Village program. He described the family's progress in the counseling program as "slow but steady." Tr. at 21. Although Malik hoped that reunification could take place by the end of summer of 2004, he testified that he would not be comfortable recommending a return of custody as of the time of the evidentiary hearing. Tr. at 28.
 {¶ 16} Christine Beeman, the TCDJFS ongoing caseworker, also referenced the slow but steady progress appellant was making in Malik's program. Tr. at 38. Beeman recalled, however, that she had been seeking to get appellant into a family counseling program starting in 2001, but that appellant only became engaged in such a program after Mary Beth was ordered into the temporary custody of TCDJFS in December 2002. Beeman also noted that appellant had been aware since as early as January 2003 of the case plan requirement to complete a psychological evaluation. Nonetheless, appellant allowed nearly nine months to lapse before seeking an appointment, and only then after TCDJFS had filed its motion for permanent custody. Beeman further noted that despite appellant's case plan requirements to obtain stable housing and full-time employment, appellant and her current husband were living in a one-bedroom apartment at the time of the hearing, and appellant had only obtained steady employment for the preceding four to six months. Beeman also stated: "Abby [appellant] has, as much as I think that she wants to, she's failed to, um, do the things that she knows that she needs to do to protect her children from the sexual abuse, especially Mary Beth." Tr. at 48.
 {¶ 17} Appellant also took the stand She testified she would give a one-hundred percent effort to engage in any treatment or medication plan instituted by Dr. Misra and Dr. Pennepacher, her psychiatrist. Tr. at 72-73. She promised to cooperate in the continuing therapy and counseling even if Mary Beth were returned to her. Tr. at 73. She noted that she anticipated a promotion to night manager at the Strasburg Hardee's restaurant, which would include a raise in her hourly wage.[2] Tr. at 71. During cross-examination, when asked about Mary Beth's recent ADHD diagnosis, appellant conceded she hadn't always ensured that James, who also has ADHD, received his medications. Tr. at 80. Appellant also admitted that the reason for her delay in seeking a psychological evaluation was "because I actually didn't think there was anything wrong." Tr. at 84.
 {¶ 18} Based on the evidence presented, the trial court found that appellant had long-standing emotional and thinking impairment, and a pattern of social detachment. Appellant was also found to require long-term and intensive treatment for her Axis I and II diagnoses, and, based on Dr. Misra's testimony, unable to safely parent a child now or in the near future. Although Mr. Malik was found to have been more positive about appellant's ability to parent, the court recognized that Mary Beth was doing well in her foster care setting. Judgment Entry at 3.
 Best Interest Finding {¶ 19} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 20} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 21} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 22} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 23} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 24} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 25} In addition to the witnesses analyzed above, the trial court had before it the guardian-ad-litem's report. The report discusses, inter alia, the revelations that Mary Beth has been sexually abused by David and a cousin. Despite Mary Beth's expression to the guardian-ad-litem that she did not desire to be adopted, the report recommends permanent custody, in part because "there are still too many issues that need to be addressed before Mary Beth could be returned home." Report at p. 7.
 {¶ 26} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578. Moreover, in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. In re Rossantelli Children, Delaware App. No. 01CAF12072, 2002-Ohio-2525, citing Thompson v. Thompson (1987),31 Ohio App.3d 254, 258, 511 N.E.2d 412, and Trickey v. Trickey (1952),158 Ohio St. 9, 13, 106 N.E.2d 772.
 {¶ 27} Upon review, we conclude the trial court's grant of permanent custody to TCDJFS was supported by the evidence and did not constitute an abuse of discretion.
 {¶ 28} Appellant's First and Second Assignments of Error are overruled.
 {¶ 29} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.
Wise, P.J. Edwards, J., and Boggins, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.
Costs to appellant.
[1] Appellant stipulated to the PPLA determination concerning David and James. This appeal will address Mary Beth only.
[2] Appellant's husband, who is not the father of these children, is a recipient of social security disability benefits.