DECISION AND JOURNAL ENTRY
Appellant Maurica J. Constantino appeals from the decree of divorce entered by the Wayne County Domestic Relations Court that granted custody of her son, John, to Appellee John Constantino. This Court affirms.
 I.
Appellant and Appellee were married on February 19, 1991. Appellant is the natural mother of Christopher, age fourteen, and John, age six. Appellee adopted Christopher and is the natural father of John. On May 21, 1999, Appellee filed a complaint for divorce. Pursuant to a temporary order, the parties agreed that Appellee would reside in the marital residence, that Appellant would be the temporary residential parent of Christopher and John, and that Appellee would pay child support. The magistrate conducted an in camera interview of both minor children and nine witnesses testified at the contested divorce hearing. On December 9, 1999, the magistrate awarded custody of Christopher to Appellant and custody of John to Appellee. Appellant filed an objection to the magistrate's decision. The trial court overruled Appellant's objection and adopted the magistrate's decision on February 8, 2000. Appellant timely appealed, asserting one assignment of error.
 II. The trial court abused its discretion in granting custody of the youngest child, [John] to Appellee, as the court failed to consider all relevant factors as mandated in [R.C. 3109.04] and the decision was not in the best interest of the children.
In her sole assignment of error, Appellant has argued that the trial court did not consider the factors enumerated in R.C. 3109.04.[1]
Further, Appellant has asserted that the trial court's decision is not in the best interests of her children. This Court disagrees.
The statutory law governing the allocation of parental rights and responsibilities is R.C. 3109.04. Parental rights and responsibilities are to be allocated based upon the "best interest of the child." Braatzv. Braatz (1999), 85 Ohio St.3d 40, 43.
R.C. 3109.04(F)(1) sets forth a nonexclusive list of considerations in determining best interests:
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.
 A trial court has broad discretion when it decides the allocation of parental rights and responsibilities. Donovan v. Donovan (1996), 110 Ohio App.3d 615, 618. Moreover, a trial court's judgment in custody matters enjoys a presumption of correctness and should be accorded the utmost respect. Butler v. Butler (1995), 107 Ohio App.3d 633, 638. A reviewing court may not reverse a trial court's custody determination absent an abuse of discretion Donovan, 110 Ohio App.3d at 618. An abuse of discretion implies that the court's decision was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
This Court will address each of the relevant factors for determining the best interests of the children in turn.
 A. Wishes of the Children's Parents
In the case at bar, the major issue was the allocation of parental rights and responsibilities because both Appellant and Appellee had a strong desire to be the custodial parent of Christopher and John. The guardian ad litem recommended custody of both children to Appellant in his report because Appellee was more interested in winning and losing custody than the best interests of the children.[2] However, the magistrate only gave the report moderate weight because he felt that the testimony of both parties showed that they were interested in the best interest of their children.
Appellant testified that she has been the primary caregiver for the children. She also stated that Appellee did provide adequate care and was a good father. Appellant testified that Appellee physically and verbally abused her. The record also indicates that Appellant and her mother were involved in a physical confrontation.
During the hearing, Appellant accused Appellee of trying to punish her for contesting the divorce proceedings by trying to gain custody of the children. She further stated that Appellee had asked her to pay him for watching the children. Appellee responded by stating that he only requested the money once to purchase food because Appellant brought the children over on a nonscheduled visitation date.
 B. Trial Court's Interview of the Children in Chambers
The magistrate interviewed John and Christopher in his chambers.[3]
The magistrate reported that John was too young to make an election, while Christopher elected to live with Appellant. The magistrate mentioned in his report that Christopher has refused almost all contact with Appellee. In his report, the magistrate indicated that the reason Christopher did not want any contact with Appellee was because Christopher believed that Appellee treats him differently than John. The magistrate found that Appellant and her family continue to remind Christopher that he was adopted and that this is the reason that Christopher feels Appellee treats him differently.
 C. Children's Adjustment to Home, School, and the Community
James Curtis, Christopher's principal, testified at the hearing that he recommended holding Christopher back in the seventh grade because Christopher had failed three subjects. Christopher's grades dropped after Appellant moved from the marital home. Christopher could have attended summer school, but Appellant testified that she did not have $100 to pay for the classes.
The record reveals that John was left unattended by the pool at Appellant's apartment complex. Appellee testified that he thought it was dangerous because John could not swim. There was also testimony that Christopher recently started carving things into his forearms. When Appellee confronted Appellant about the situation, Appellant did not think there was a problem. As a result, Appellant has not sent Christopher to a psychologist. There was also testimony at the hearing that for the past seven months, Appellant has failed to take Christopher to the orthodontist for his monthly check-up. The magistrate found that it was Appellant's responsibility to take Christopher to the orthodontist because she was the primary caretaker at that time.
Appellant testified that Christopher was diagnosed with Attention Deficit Disorder and was prescribed Ritalin. Appellant stated that Christopher did not take the medication the second half of the school year because he was in the wrestling program. She testified that Christopher made the choice to drop out of the wrestling program and would start taking the medication again. The record revealed that Christopher was not even eligible for the wrestling program because of his poor academic performance. The magistrate noted that it seemed like Christopher, not Appellant, made the decisions regarding the use of Ritalin.
 D. Appellant's Employment
As part of the proceeding, Appellant was required to attend a counseling class. During the past seven months, Appellant signed up for the class twice, but was unable to attend because of her financial situation. Appellant has had several jobs since she moved out of the marital home. She is currently working twenty-seven hours a week at Dairy Mart.
Before she departed from the marital home, Appellant was employed at the Wayne County Municipal Court in the Wooster Probation Department. Douglas Lenhart, the court administer, testified that Appellant had voluntarily resigned from her position. Mr. Lenhart stated that Appellant was asked to resign when she ran the criminal record of her boyfriend on the LEADS program without authorization. At the hearing, Appellant acknowledged that she had lied under oath at the proceeding for her deposition. She stated that the lie was based upon her embarrassment from the situation. The magistrate felt that Appellant's actions were not in the child's best interest.
 E. Appellant's Residence and Boyfriend
At the time of the hearing, Appellant resided with her children, her boyfriend, Charles Ryan Maynard, and his child in a two-bedroom apartment. Appellant had only known Mr. Maynard for one month before she moved in with him. Mr. Maynard admitted that his apartment was crowded and that he could not break his lease. He stated that he would get a larger place as soon as the lease expired. Mr. Maynard observed that his child and Appellant's children behave as if they were all born together. Lastly, there was testimony that Appellant's children get along well with Mr. Maynard.
The record reveals that Mr. Maynard had two theft convictions and a conviction for driving under the influence of alcohol. Mr. Maynard was unable to recall his convictions at the hearing; therefore, the magistrate concluded that he had either a terrible memory or a credibility problem. His last theft conviction was in 1997, where he called an adult entertainment phone service while at work. Although Mr. Maynard has a suspended driver's license, he is currently driving with Appellant's children in the car. Appellant testified that she did not think her children were in any danger because Mr. Maynard is a safe driver. Based on the foregoing, the magistrate determined that Appellant condoned an illegal activity, which may not be in the child's best interest and was not a good example for her children.
 F. Appellee's Employment and Residence
Appellee testified that he has been employed for the past year at American Commercial Vehicles in Orrville. He resides in the same mobile home that the children were living in prior to the parties' separation. Appellee testified that he is planning on purchasing the mobile home.
After reviewing the record, this Court concludes that the trial court did not abuse its discretion in its custody allocation. The magistrate considered the factors enumerated in R.C. 3109.04(F) and determined that it would be in John's best interest if he lived with Appellee because John would have a stable lifestyle. This Court will not second-guess the magistrate's decision. See Bowman v. Bowman (Mar. 19, 1997), Medina App. No. 2574-M, unreported, at 6-7. Defendant's argument is without merit.
 III.
Defendant's sole assignment of error is overruled. The judgment of the Wayne County Domestic Relations Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
BAIRD, P. J. SLABY, J. CONCUR
[1] In her brief, Appellant has asserted that the trial court failed to consider the effect of separating the siblings, the primary caretaker doctrine, and the tender years doctrine. This Court notes that the above doctrines are part of R.C. 3109.04. See Thompson v. Thompson (1987),31 Ohio App.3d 254, 257; see, also, Bechtol v. Bechtol (1990),49 Ohio St.3d 21, 23-24.
[2] The information in this opinion concerning the guardian adlitem's report is based on the parties' references to the report during the hearing and the magistrate's order. This Court cannot review the report of the guardian ad litem because it is not part of the record. See Wozniak v. Wozniak (1993), 90 Ohio App.3d 400,409.
[3] This Court notes that neither party requested that the trial court record the in camera interview. Consequently, this Court cannot review the testimony of the children.