KLAMO, APPELLEE, *v.*
KLAMO, APPELLANT.

(No. CA88-02-024—Decided
November 21, 1988.)

*Baden, Jones, Scheper & Crehan Co., L.P.A., Matthew J. Crehan* and *David Landis,* for appellee.

*F. Joseph Schiavone Co., L.P.A.,* for appellant.

*Per Curiam.* This is an appeal by defendant-appellant, Donald Lee Klamo, from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, granting custody of the parties' minor daughter, Sarah, to plaintiff-appellee, Mary Kathleen Klamo.

The parties were granted a divorce on February 21, 1986. The divorce decree incorporated a plan for joint custody of their seven-year-old daughter which had previously been agreed upon by the parties. According to the plan, physical custody of Sarah would alternate weekly. However, soon after this arrangement was initiated, problems developed and the parties agreed to alter the plan so that each parent would have custody on alternating days during the week and alternating weekends. Around Christmas of 1986, the parties decided to go back to the original custody agreement of alternating weeks. This arrangement continued until September 1987 when appellee filed a motion seeking full custody of Sarah or a revamping of the joint custody agreement. Later, appellant filed a similar motion. The trial court found that the best interests of the child would be served by placing her in the custody of appellee with visitation rights to appellant. This appeal followed.

The testimony at trial indicated that the lack of cooperation between the parties was making the joint custody plan unworkable. The whole arrangement was causing Sarah a great deal of stress due to switching back and forth between the parents. In addition, the animosity between her parents and, in particular, the attitude of her father, were causing emotional problems for the child.

Appellant has been a Jehovah's Witness all his life. Appellee was raised in the Catholic religion but became a Jehovah's Witness when she was a teenager. At the time of the marriage and at the birth of Sarah, both parties belonged to this sect. Sometime in 1985, appellee renounced her faith and since that time has not practiced any religion. Appellant continues to be a devout Jehovah's Witness.

Appellant believed Sarah's mother sought medical attention for the child much too quickly. He indicated he would not encourage Sarah to go to college because of the tenets of his religion. Further, he does not celebrate holidays or birthdays and would not allow Sarah to do so. He does not believe she should socialize with those outside the religion and would not allow her to attend school or social events while he is not with her.

The expert testimony of a child psychologist further indicated that appellant, who was in general a good and loving father, had insisted Sarah must

choose now to be a Jehovah's Witness in order to be saved. This would mean that she must sever contact with her mother because God disapproved of her mother's negative influence. Although Sarah loves and respects her father and is eager to please both of her parents, she identifies more closely with her mother. Therefore, appellant's statements had caused her considerable stress. The psychologist recommended that the mother be given custody. He felt that the father, as the visiting parent, would have more access to the child than the mother would have if she were the visiting parent.

Appellant's sole assignment of error states that the trial court erred by allowing the introduction of testimony regarding appellant's religious beliefs. He argues that it was an abuse of discretion for the trial court to allow the matter of religion to become an integral part of its decision to change custody. He also argues that the granting of custody based on a parent's religious beliefs violates the parent's constitutional right to attempt religious training and indoctrination in violation of the United States and Ohio Constitutions.

We do not believe that the trial court abused its discretion. It did not base its decision on the religion of the parents but rather on the best interests of the child.

In determining which parent will receive custody after a divorce, the domestic relations court must consider what is in the best interests of the child. R.C. 3109.04(A). In making that determination, the court is bound by the factors listed in R.C. 3109.04(C).

The trial court has broad discretion in matters of custody and is subject to reversal upon a showing of abuse of discretion. *Baxter* v. *Baxter* (1971), 27 Ohio St. 2d 168, 56 O.O. 2d 104, 271 N.E. 2d 873. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Thompson* v. *Thompson* (1987), 31 Ohio App. 3d 254, 31 OBR 538, 511 N.E. 2d 412, citing *Martin* v. *Martin* (1985), 18 Ohio St. 3d 292, 18 OBR 342, 480 N.E. 2d 1112.

Appellant claims, in essence, that the trial court's decision was arbitrary because it was based solely on his religion. There is nothing in the record to support this conclusion. On the contrary, the record establishes that the trial court considered the specific factors in R.C. 3109.04(C) in making its custody decision. Testimony indicated many facts, apart from appellant's religion, that would support its decision. If appellant were granted custody, the child would be less likely to receive medical attention, to obtain a college education, to participate in social activities, and most importantly, to have access to her mother. In addition, the child would be more likely to incur additional stress because of her father's attitude towards her mother.

Appellant further contends that the trial court's decision violated both the United States and Ohio Constitutions in considering his religious beliefs. The Ohio Supreme Court rejected this argument in *Birch* v. *Birch* (1984), 11 Ohio St. 3d 85, 11 OBR 327, 463 N.E. 2d 1254, following *Prince* v. *Massachusetts* (1944), 321 U.S. 158.

In the *Birch* case, the mother, an ultra-conservative Catholic, was mentally unstable and fanatical in her religious practices. She claimed the trial court's denial of custody violated her right to the free exercise of religion. The Supreme Court rejected this argument saying " 'the family itself is not beyond regulation in the public interest, as against a claim of religious liberty.' " *Birch, supra,* at 87, 11 OBR at 329, 463 N.E. 2d at 1257, quoting *Prince, supra.* The state has a wide range of power for limiting parental freedom and authority in

things affecting the child's welfare, including religious matters.

The state, through its courts, has the power to consider the parents' religious convictions in awarding custody as those convictions relate to the determination of what is in the best interests of the child. In so doing, it does not violate the parties' constitutional rights. Appellant is still free to instruct his child on his religious beliefs and to teach her as he sees fit. As long as religion is not the sole deciding factor, a court does not abuse its discretion by considering religious matters.

For the foregoing reasons, the assignment of error is overruled.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., HENDRICKSON and YOUNG, JJ., concur.