OPINION
{¶ 1} Appellants Gregory and Joyce Smith appeal a judgment of the Court of Common Pleas, Domestic Relations Division, of Fairfield County, Ohio, which granted legal custody of their minor grandson, Izaak to the maternal grandparents, Carla and Eugene Quigg, the appellees herein. The court also found appellants in contempt of court and ordered them to pay the costs of the litigation. Appellants assign seven errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY CONDUCTING A BIFURCATED TRIAL, HEARING THE CASE ON THE MERITS WITH TWO TRIERS OF FACT, MAKING INSUFFICIENT FINDINGS, USING VERBATIM "FINDINGS" OF THE APPELLEES INSTEAD OF ITS OWN.
 {¶ 3} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS DECISION TO AWARD TEMPORARY CUSTODY TO THE APPELLEES ON DECEMBER 15, 2003 AND RETAIN TEMPORARY CUSTODY UPON HEARING ON JANUARY 5, 2004.
 {¶ 4} "III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED THE PLAINTIFFS/APPELLANTS TO PAY APPELLEES' LEGAL FEES, GUARDIAN AD LITEM FEES, EXPERT FEES AND ALL COSTS OF THE APPELLEES' LITIGATION.
 {¶ 5} "IV. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT REPLACE THE GUARDIAN AD LITEM WHEN HE FAILED TO ADHERE TO BASIC DUTIES OF A GUARDIAN AD LITEM, FAILED TO ACT IN AN EVEN HANDED MANNER AND OPENLY TESTIFIED TO EXTREME DISGUST TOWARD APPELLANTS AND THEIR ATTORNEY.
 {¶ 6} "V. VIOLATED (sic) THE PLAINTIFFS/APPELLANTS EQUAL PROTECTION RIGHTS AND THEIR CONSTITUTIONAL RIGHT TO PRACTICE THEIR RELIGIOUS BELIEFS WHEN IT ORDERED A PREJUDICIAL ORDER REGARDING COMPANIONSHIP TO A NON-PARENT OF TRADITIONAL CHRISTIAN BACKGROUND.
 {¶ 7} "VI. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT FIND THE DEFENDANT/APPELLEES IN CONTEMPT OF ITS OCTOBER 10, 2001 (sic).
 {¶ 8} "VII. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS DECISION TO AWARD CUSTODY OF IZAAK SMITH TO THE APPELLEES."
 {¶ 9} The record indicates Christina Quigg and Gavin Smith, an unmarried couple, had a child, Izaak, on April 26, 1998. In December of 1998, Gavin Smith was legally declared Izaak's father, and on January 22, 1999, Gavin filed for custody of Izaak. On October 27, 1999, the court named Gavin the residential parent for Izaak. On February 21, 2001, Christina Quigg was killed in a train/automobile crash. Appellee Carla Quigg is Christina's biological mother and her husband Appellee Eugene Quigg is her father by adoption. Appellants here are Gavin's parents, Gregory and Janice Smith. Gavin is not a party to this appeal, but prosecuted his own appeal, see Smith v. Quigg,
Fairfield App. No. 2005-CA-002, ___-Ohio-___.
 {¶ 10} On September 17, 2001, the court granted appellees rights of companionship with Izaak.
 {¶ 11} After Gavin obtained custody of Izaak in 1999, the child resided at the home of Gavin's parents, the appellants herein. Gavin has an older child with whom he has visitation rights. During visitation, this child would stay with appellants. At some points in time, Gavin also resided there, but even when Gavin was not residing with appellants, his children stayed with appellants and were parented at least in part by them.
 {¶ 12} On October 5, 2001, Gavin denied appellees their scheduled companionship. On October 10, 2001, the court entered a judgment formally joining appellees and allocating them visitation rights. Part of the order directed appellees to comply with the wishes of Gavin Smith, the father, regarding the religious training for the minor child. Appellees' visitation with Izaak continued to be a source of conflict between the parties.
 {¶ 13} At least part of the friction between appellants and Gavin on one side, and appellees on the other arose out of the parties' religious beliefs. Gavin was raised as a Jehovah's Witness, although he became disfellowshipped from the church and does not attend services. Gavin's mother is a practicing Jehovah's Witness. His father does not attend any church but wants Izaak to be raised as a Jehovah's Witness. Appellees are Methodist.
 {¶ 14} Jehovah's Witnesses do not celebrate birthdays, holidays, or political and national holidays. They do not say the pledge of allegiance, do not salute the flag, and do not honor other secular icons. Jehovah's Witnesses do not participate in competitive team sports. By contrast, appellees' Methodist church does not forbid those activities.
 {¶ 15} On January 2, 2002 and on August 22, 2002, appellees filed a motion for contempt against Gavin for denying their companionship rights. In the August 22 motion appellees also moved for reallocation of companionship rights. On October 23, 2002, the court appointed a guardian ad litem for Izaak.
 {¶ 16} On May 4, 2003 Dr. Jack Tarpey submitted his report on the psychological evaluations he had done on appellees and on Gavin. Dr. Tarpey reported Izaak had no developmental difficulties and was age appropriate in his behavior and abilities. Dr. Tarpey reported he observed Izaak's interaction with Gavin and there was no indication of avoidance. Dr. Tarpey also indicated he found nothing in his evaluation of appellees to justify Gavin's criticisms of them, but Gavin had a strong motivation to deny them a relationship with Izaak.
 {¶ 17} On May 13, 2003, appellants commenced a proceeding to adopt Izaak in Franklin County, Ohio. In this action, Gavin consented to the adoption of his son. The Fairfield County court was not notified of the adoption proceeding, nor were the guardian ad litem or appellees. On May 27, 2003, appellees filed a motion for custody of Izaak in Fairfield County, Ohio, where the previous litigation had taken place.
 {¶ 18} On July 3, 2003, the Franklin County Probate Court issued a final decree of adoption, but later vacated this decree on August 28, 2003. The Franklin County Probate Court transferred the adoption case to the Fairfield County Probate Court, which subsequently dismissed the adoption proceedings.
 {¶ 19} On September 2, 2003, appellees filed a motion for emergency custody of Izaak. The court granted the motion. On September 11, 2003, appellants filed a motion to intervene, which was also granted. At the hearing on the emergency custody order, appellants were awarded temporary custody of Izaak with appellees receiving companionship rights. The court ordered appellants to submit to psychological testing by Dr. Tarpey. Conflict between appellants and appellees continued, and in December of 2003, appellees again filed for emergency custody. The court granted the emergency custody order on behalf of appellees, and at the subsequent hearing, the court continued temporary custody of Izaak with appellees. Appellants received companionship rights, but Gavin was not given any specific companionship rights.
 {¶ 20} In October of 2003, appellees moved the court for an order that Gavin and appellants pay all attorney fees, guardian ad litem fees, psychological examination fees, and other costs associated with the proceedings. The court sustained the motion and ordered appellants and Gavin collectively to pay $105,540.37 with statutory interest.
 {¶ 21} The record indicates both Gavin and the appellant grandmother participated in physical abuse of Izaak. After Izaak reported incidents of inappropriate touching by his appellant grandmother, the Fairfield County Children's Services investigated but did not intervene.
 {¶ 22} The guardian ad litem was extremely critical of appellants and Gavin, and their own counselor testified they were inflexible and appellant grandmother is hot-headed.
 {¶ 23} At the outset, we note the trial court awarded "permanent custody" of Izaak to appellees. Our review of the order indicates the court misused the word permanent, and in fact awarded legal custody to appellees. The court found Gavin had abandoned Izaak, but did not terminate his parental rights.
 {¶ 24} In the case of In the Matter of McLaughlin Children,
Stark App. No. 2002C-A-00316, 2003-Ohio-761, this court held a trial court has broad discretion in matters concerning the allocation of parental rights and responsibilities and we will not disturb its decision on appeal absent an abuse of discretion.Masters v. Masters (1994), 69 Ohio St.3d 83, 85,630 N.E.2d 655. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. The trial court has discretion to evaluate the credibility of witnesses, and an appellate court may not substitute its judgment for that of the finder of fact, see State v. Awan (1986), 22 Ohio St.3d 121.
 I. {¶ 25} In their first assignment of error, appellants argue the trial court abused its discretion by conducting a bifurcated trial. The record indicates it took nine days to hear the case on its merits. The magistrate to whom the matter was referred heard the case on July 19 through 22, while the trial court presided over the hearing from November 15 to November 19. Appellants' assignment of error urges the court abused its discretion because there were two triers of fact.
 {¶ 26} App. R. 53 permits the court to appoint magistrates and refer all or part of a case to the magistrate. A magistrate may prepare reports or a decision but pursuant to the rule, the decision is not effective unless and until it is adopted by the court. We find no impropriety in the way this case was heard.
 {¶ 27} Appellants also urge the trial court made insufficient findings of fact. The trial court's judgment entry is 56 pages long, and contains 525 items under the heading "Findings of Fact".
 {¶ 28} We agree with appellants not all these items are findings of fact, but rather, a large number of them are recitations of the evidence presented to the court, without any statement indicating whether the court believed the testimony presented. In the case of In Re: Kevon Mays, a minor child (May 17, 1999), Stark App. No. 98-CA-0293, this court reviewed a similar situation where some of the findings of fact were mere recitations of evidence. In Mays, we also found the conclusions of law were nothing more than recitation of the applicable statutes, and the court made no findings of fact regarding those factors as applied to Kevon and his mother.
 {¶ 29} By contrast, the court here made extensive conclusions of law regarding the standard for awarding legal custody to a non-parent and also enumerated the factors to be considered in determining the best interest of the child. The court set out each factor and then itemized the pertinent facts of the case which bear on each factor.
 {¶ 30} Appellants also contend the court committed error in adopting some of appellees' proposed findings of fact and conclusions of law verbatim, instead of formulating its own. Appellants cite us to In the Matter of the Adoption of Aiken
(March 30, 1992), Montgomery Appellate No. 12522, which held:
 {¶ 31} "When presented with a motion for findings of fact and conclusions of law a trial court may require the parties to submit proposed findings of fact and conclusions of law. Civ.R.52 The court cannot transfer its responsibility for making findings and conclusions onto the parties; however, the court may adopt as its own the findings and conclusions submitted by them. SeeRoberts v. Ross (1965), 344 F.2d 747, 752. However, the findings and conclusions of a party, adopted by a court, will be given less weight on review and will be reviewed more closely than if they are the work product of the trial court. Id".
 {¶ 32} Appellants concede the court only adopted about half of appellees' proposed findings of fact. Our review of the record leads us to conclude the court did not err in adopting some of the findings of fact proposed by appellees. We further find the trial court made sufficient findings of fact and conclusions of law from which this court may conduct a meaningful review.
 {¶ 33} The first assignment of error is overruled.
 II. III. {¶ 34} In their second assignment of error, appellants urge the court abused its discretion in its decision to award temporary custody to the appellees in December of 2003, and then continue the temporary custody after the January 5th hearing. The trial court's final judgment entry was not filed until December 30, 2004.
 {¶ 35} As appellees point out, there is no transcript of either hearing. The Juvenile Rules provide for a court to issue ex parte orders and temporary orders during the pendency of the case.
 {¶ 36} Most frequently it is the county Department of Job and Family Services who files a motion for emergency ex parte orders and for temporary custody, rather than a private party. Where JFS removes a child from the home and takes temporary custody, this triggers the running of the clock for reunification of the family because the parent's rights may be terminated if the child remains in JFS's custody for too long a time. Here, the situation is more like a dispute over custody in a divorce. Under those circumstances, the court's final order supercedes the temporary orders, and corrects any error. We find the issue is moot.
 {¶ 37} Appellants were ordered to pay all appellees' legal fees, all guardian ad litem fees, all expert fees, the cost of all the psychological evaluations, costs of depositions and transcriptions, and for the parenting classes both appellants and appellees attended. The total judgment against the appellants is in the amount of $105,540.37. Appellants argue the removal of the child ex parte, their loss of temporary custody of the child, and the large judgment against them are all punitive and contrary to Ohio law pertaining to contempt proceedings.
 {¶ 38} At the time in question, there was a dispute over appellees' visitation rights. It appears appellants withheld Izaak from a 48 hour visit with appellees because appellees intended to trim their Christmas tree that weekend, which is contrary to appellants' religious beliefs. Appellants argue they attempted to re-schedule the companionship time, but immediately after the denial of visitation the appellees filed for the emergency temporary custody.
 {¶ 39} The trial court did not find appellants guilty of contempt at the hearing on January 5. Instead, the court found appellants in civil and criminal contempt in the final entry dated December 30, 2004. The court found because of the contemptuous actions of Gavin and appellants, appellees were required to take drastic, prolonged court action. The court found all activity and expenses after the initial visitation order are a result of Gavin's and appellants' improper conduct. The court found appellants and Gavin had all operated in bad faith, and all the fees stemmed entirely from their refusal to comply with the orders of the court.
 {¶ 40} R.C. 3109.05 provides a person found in contempt for interfering with parenting time rights shall pay all court costs arising out of any contempt proceeding against the person, along with reasonable attorney fees as determined by the court to have arisen in relation to the contemptuous acts.
 {¶ 41} R.C. 2705.05 sets forth the criminal penalties for contempt. For a first offense the fine is not more than $200 and imprisonment of no more than 30 days; a second offense a fine of not more $500 and not more than 60 days in jail; and for third or subsequent offenses, a fine of not more than $1,000 and a definite term of imprisonment of not more than 90 days in jail, or both.
 {¶ 42} The trial court found the parties' contemptuous conduct arose after the issuance of the original visitation order, and the contemptuous conduct in disobeying the order is what gave rise to the entire action. The court found the fees were reasonable and necessary.
 {¶ 43} Appellants urge they had not intervened in the action until September of 2003, and should not have to pay for fees incurred prior to that date. However, the trial court specifically found both Gavin and the appellants have a "track record" of total distain for any court order and believe their wishes outweigh the court's order. The court found although the appellants were not parties to this action until September of 2003, they participated in the fraudulent adoption proceedings in July 2003. The court found the parties never had any plan to allow appellees contact with the child.
 {¶ 44} Our review of the record leads us to conclude the trial court did not abuse its discretion either in modifying the custody order or in requiring appellants to pay the costs and fees incurred in the litigation.
 {¶ 45} The second and third assignments of error are overruled.
 IV. {¶ 46} In their fourth assignment of error, appellants urge the court abused its discretion in not replacing the guardian ad litem because he did not appropriately discharge his duties and did not act fairly.
 {¶ 47} Loc. R. 13.2 of the Fairfield County Domestic Relations Court sets forth the duties of the guardian ad litem. The Rule notes the feasibility of some of the duties depends upon the age of the children and the specific circumstances of the case, and the guardian ad litem has discretion to tailor each duty listed to the needs of the individual case. The duties are: (a) interview the child(ren) and observe each parent with the child (ren); (b) review pleadings and consult with each attorney as to position and issues; (c) investigate all significant persons and interview independently; (d) obtain records e.g., school, criminal, medical, psychological, child protective agency; (e) perform home visits (this may be combined with the interview process); (f) evaluate the necessity, if any, of psychological evaluations or counseling; and file a motion requesting the same; (g) communicate with the protective services workers; and (h) attend all depositions concerning the best interest of the child (ren) incompetent.
 {¶ 48} Appellants urge the court depends upon the guardian ad litem to thoroughly investigate all circumstances in order to assist the court in making decisions about parenting time. Appellants argue the guardian ad litem's report and testimony show he did not consider all the factors and only concentrated on which party would be more likely to obey the orders of the court.
 {¶ 49} The guardian ad litem noted ordinarily religion did not play a part in his decision making process, but here, the issue was unavoidable. The guardian ad litem reported Gavin repeatedly lied about his religious observances and church attendance, and the report gives the impression the guardian questioned the sincerity of Gavin's beliefs. However, the guardian ad litem's report included discussions of many other issues including Izaak's interactions with appellants and with appellees, the corporal punishment administered by Gavin and appellant grandmother, Izaak's report of sexual abuse by the appellant grandmother, and the lack of commitment Gavin displayed for being Izaak's caregiver.
 {¶ 50} The guardian ad litem acts on behalf of the minor child, and must focus on what is in the child's best interest, see, e.g., In Re: Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368. The guardian must provide the court with an independent evaluation of the issues. Id.
 {¶ 51} We further find the trial court is not bound by any findings or recommendations of a guardian ad litem, and will review the guardian ad litem's report in connection with all the other evidence presented to it. The court is the finder of fact, and assesses the weight and credibility of the evidence before it. This court may not substitute its judgment for that of the trial court. McLaughlin, supra.
 {¶ 52} Our review of the record indicates the guardian ad litem performed the duties required by the local rule, and was available for cross-examination on his report by all parties at trial. The court's final judgment demonstrates it did not rely solely on the guardian ad litem's report, but considered a great deal of other evidence.
 {¶ 53} We find the trial court did not abuse its discretion in not removing the guardian ad litem. Accordingly, the fourth assignment of error is overruled.
 V. {¶ 54} Appellants argue the trial court violated their right to practice their religion when it ordered companionship to a non-parent of traditional Christian background. Appellants concede as long as religion is not sole deciding factor, a court does not abuse its discretion by considering religious matters,Klamo v. Klamo (1988), 56 Ohio App. 3d 15, 564 N.E. 2d 1078. We note appellants and appellees are all non-parents. Appellants point to the guardian ad litem's recommendation Izaak should spend traditional holidays with appellees because appellants do not celebrate them. Appellants urge the court awarded custody to the appellees because it favors their religious beliefs and disdains their own.
 {¶ 55} Over the course of the nine day trial, the court was deluged with information and allegations from both appellants and appellees. The trial court made extensive findings of fact with regard to Izaak's best interest. The issue of religion is only one factor, and the court considered a myriad of secular issues throughout the course of this case.
 {¶ 56} Finally, appellants argue the trial court has interfered with the practice of their religion. We find to the contrary, the trial court has tried to steer a course respecting both parties' religions. What appellants wish is for the court to interfere with appellees' practice of their religion in their own home, and have consistently attempted to prohibit appellees from doing anything appellees disapprove of, even if it involves holidays the Methodist religion celebrates. The trial court's order grants appellants visitation with the child on a regular basis, and requires Izaak to be with them to celebrate the Jehovah Witnesses' only holiday, the Last Supper.
 {¶ 57} We find the trial court did not demonstrate preferential treatment of appellees' religion or interfere with appellants' ability to practice their own. Accordingly, the fifth assignment of error is overruled.
 VI. {¶ 58} In their sixth assignment of error, appellants argue the court abused its discretion when it did not find the appellees in contempt of its October 10, 2001 order. That order stated the grandparents shall comply with the wishes of the plaintiff [Gavin] regarding the religious training for the minor child.
 {¶ 59} Appellees point out there were at least four subsequent orders entered after the October 10, 2001 order, none of which contain this language.
 {¶ 60} The trial court issued the order in question, and is the fact finder regarding compliance with it. A trial court's finding of contempt may not be reversed absent an abuse of discretion, State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10. This court cannot find the trial court abused its discretion in finding appellees were not in contempt of court.
 {¶ 61} The sixth assignment of error is overruled.
 VII. {¶ 62} In their seventh assignment of error, appellants argue the court erred in awarding custody of Izaak to the appellees. They reiterate their argument from I, supra, the court's findings were recitations of testimony and not fact findings. As stated supra, the trial court made extensive findings of fact in analyzing the factors in R.C. 3109.04. These facts are sufficient for this court to do an effective appellate review.
 {¶ 63} The trial court set out each factor of R.C. 3109.04, and made specific findings on each, at some five pages in length. The court found Gavin has relinquished his parental rights and the matter of custody is between the grandparents. The court concluded on every applicable the statutory factor, Izaak's best interest lay in placing him with appellees.
 {¶ 64} We find the trial court's decision was not an abuse of discretion and is supported by the record.
 {¶ 65} The seventh assignment of error is overruled.
 {¶ 66} For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, of Fairfield County, Ohio, is affirmed.
Gwin, J., Wise, P.J., and Hoffman, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, of Fairfield County, Ohio, is affirmed. Costs to appellants.