OPINION *Page 2 
{¶ 1} Defendant Sue Eiler appeals a judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, which named plaintiff-appellee Mark Schoolcraft the residential parent of the parties' minor daughter, born January 25, 2005. Appellant assigns two errors to the trial court:
 {¶ 2} "I. THE TRIAL COURT DENIED DEFENDANT/APPELLANT DUE PROCESS ACCORDING TO LAW.
 {¶ 3} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN TERMINATING THE DEFENDANT/APPELLANT'S CUSTODY OF THE MINOR CHILD AND GRANTING VISITATION/CUSTODY TO THE PLAINTIFF/APPELLEE."
 {¶ 4} The record indicates appellee initiated this action by filing a motion for allocation of parental rights and responsibilities, asking the court to designate him the child's residential parent and legal custodian, on November 8, 2005. Appellee alleged the child had resided with him from birth until appellant moved out of his home in October, 2005. He argued it was in the child's best interest to reside with him. Appellant responded with a motion for child support, medical insurance, and birthing expenses, in addition to attorney fees and court costs to enable her to defend the matter. Appellant also asked the court to appoint a guardian ad litem for the child. Thereafter, the parties attempted mediation, but were unable to agree on the allocation of parental rights and responsibilities. The matter was set for final trial for one-half day on November 30, 2006. Various subpoenas were issued to witnesses and each party filed a proposed shared parenting plan. *Page 3 
 {¶ 5} The parties appeared on November 30, but the court called a recess for ten to fifteen minutes to conduct an arraignment.
 {¶ 6} When the court called the case again, it noted its ten minute break had turned into two hours, using up nearly the entire time set aside for trial. Apparently the parties had been negotiating during the recess, and had informed the court they had reached an agreement. The court noted on the record it had reviewed the psychological evaluation and the guardian ad litem's recommendation, and had released the witnesses when the parties notified the court of the settlement. Then, the court inquired about the agreement.
 {¶ 7} Appellant's counsel addressed the court and indicated the parties, both counsel, and Dr. Tully had discussed the matter and came up with what they believed to be an agreement acceptable to everyone. Opposing counsel wrote down the terms and appellant's counsel drew up a calendar. Both parties made concessions. Appellant's counsel indicated he believed his client had accepted the plan, and had asked the guardian ad litem to sit in on the discussion as a witness. Counsel apologized to the court and advised appellant had had second thoughts and could not accept the terms of the agreement. Appellant's counsel concluded by moving the court to permit him to withdraw as counsel, stating he could not continue to make good-faith representations to the court and to opposing counsel only to have his client change her mind.
 {¶ 8} The court asked appellee's counsel to read the proposed shared parenting agreement into the record, and counsel did so. Both counsel informed the court it was a correct statement of the terms of the agreement as they had understood it. The *Page 4 
guardian ad litem informed the court she believed it would be in the best interest of the child to adopt the agreement.
 {¶ 9} Appellee testified he had heard the agreement read into the record, had made various concessions, and was willing to sign and accept the agreement if the court were to adopt it.
 {¶ 10} Appellant then testified the agreement appellee's counsel had read into the record was correct as she understood it. However, on direct examination appellant then expressed concerns about the child alternating her residence between the two parties, whereupon her counsel informed her if she did not agree to the terms of the agreement as they stood, the parties would have to try the matter and she could end up with visitation only.
 {¶ 11} Appellant inquired if appellee would make further concessions regarding his time with the child, and appellant's counsel reminded her there could be no more changes to the plan. Appellant's counsel again inquired whether she would agree to accept the plan today. Appellant requested she be allowed to "sleep on it".
 {¶ 12} At that point, the trial court intervened and informed the parties it had serious concerns about any shared parenting agreement, and reminded the parties the court did not have to accept a plan even if they could come to an agreement. The court indicated further litigation would not benefit the child, and given the high conflict nature of the parties' relationship, the court was not optimistic that shared parenting would work. The court informed the parties it had no intention of putting any child in a position where the parents fought every day over mundane issues. The court indicated it did not "give a damn" about the parties' rights as measured against the effect all this had on the *Page 5 
child. The court indicated the parties had "frittered away" all the time allocated for the trial, and it was unwilling and unable to continue waiting while the parties negotiated.
 {¶ 13} Appellant then agreed to accept and comply with the parties' proposed shared-parenting agreement.
 {¶ 14} Thereafter, the court inquired of the guardian ad litem whether she was "a little squeamish" about the proposed agreement, and the guardian ad litem indicated she was. The court inquired of the guardian what she thought about custody and Schedule "A" visitation. The guardian responded both parties loved their child, and needed to get into high conflict counseling to improve their ability to communicate with each other. The guardian ad litem worried about the effect further litigation would have on the parties' ability to communicate with one another, and the effect on the child. The guardian expressed concern appellee's work schedule would present problems if he received custody of the child. The guardian stated in her opinion, if the parents continued on their current path, they would destroy the child emotionally. The court agreed cases such as this one can wind up with the child going to the Department of Youth Services or committing suicide. The court indicated it was not going to permit that to happen to this child, even if the parents "got their heads up their butts".
 {¶ 15} The court noted one of the factors it must consider is which parent, if given sole custody, would facilitate the ability of the other parent to develop a relationship with the child. The guardian ad litem testified she was neutral on this issue.
 {¶ 16} The court announced it did not believe a shared-parenting agreement was in the child's best interest, but it would take the request to approve the agreement under advisement pending a review hearing in thirty days. The court informed the parties it *Page 6 
wanted to get a feeling for which parent would facilitate the development of a relationship with the other parent, which parent was going to cease fire in disparaging the other, and which parent demonstrated caring about the child's best interest. The court announced an interim order of custody to appellee with scheduled visitation to appellant. The court also informed the parties if they were serious about having an agreement, they could proceed, but in the interim, the court ordered the parties to counseling.
 {¶ 17} The record indicates neither party objected or asked to be allowed to present evidence. Neither party attempted to proffer any evidence to the court. The court had received and reviewed reports from the guardian ad litem and the psychologist.
 {¶ 18} On January 8, 2007, the court reconvened the matter. Appellee's counsel addressed the court, and indicated the interim order was working well, and appellee had forwarded certain day care records and medical records to the guardian ad litem.
 {¶ 19} The court then asked the guardian ad litem to report. The guardian indicated she has spoken with the director of the child's pre-school, who indicated very positive changes in the child under the interim order. The guardian spoke at some length regarding what the day care center director had told her.
 {¶ 20} Appellant's counsel then addressed the court and moved to accept the proposed shared parenting plan because appellant had been the primary care taker of the child prior to the court's interim order. Appellant's counsel conceded the child was doing better, but attributed it to a greater harmony between the parents. *Page 7 
 {¶ 21} The court then found it in the best interest of the child to continue the interim orders as the final orders in the case. Neither party objected to the proceedings, asked the court to schedule an evidentiary hearing, or proffered evidence.
 I. {¶ 22} In her first assignment of error, appellant argues the trial court denied her due process in not permitting her to present evidence at the first hearing, which had originally been scheduled as an evidentiary hearing. Instead, appellant argues she was attacked from the bench, including being cursed at, and eventually conceded and consented to the shared-parenting agreement.
 {¶ 23} R.C. 3109.04 (D)(1) provides if the parties jointly request a shared-parenting plan, the court shall review it to determine if it is in the best interest of the child. If the court determines the plan or any part of the plan is not in the best interest of the child, the court shall require the parents to make appropriate changes to the plan. If the changes are made to the court's satisfaction, the court shall approve the plan, but if the court determines the new plan is not in the best interest of the child, it may reject any or all the shared-parenting agreement. If each parent files a separate proposed plan, the court must review the plans but its decision is always predicated on the best interest of the child. The statute requires findings of fact and conclusions of law.
 {¶ 24} It is evident from the record the court did not believe the parties had agreed to the proposed plan and doubted they would be able to implement it. The record amply bears this out. For this reason, we find R.C. 3109.04 (D) dealing with proposed shared parenting orders does not apply here, because the record indicates there was not a shared-parenting agreement before the court. *Page 8 
 {¶ 25} The record also indicates the evidentiary hearing did not go forward because the parties indicated they had reached an agreement, and the court had dismissed the witnesses. Appellant cannot now complain of the canceling of the evidentiary hearing when her actions were the cause of the cancellation.
 {¶ 26} Neither party ever objected to the proceedings either in the initial hearing or the subsequent review. Neither asked the court to re-schedule the evidentiary hearing. No one proffered any evidence, or objected to the guardian ad litem's discussion of what she had been told by third persons.
 {¶ 27} Finally, while it is true the court may have expressed itself in blunt terms, its frustration was clearly warranted. Appellant's counsel indicated the court's "stern lecture" had led to more agreement by the parties. Appellant's argument she consented to the agreement because she felt attacked by the court only serves to bolster the finding there was no agreement before the court.
 {¶ 28} The first assignment of error is overruled.
 II. {¶ 29} In her second assignment of error, appellant argues the court abused its discretion in adopting the interim orders as its final order of the court.
 {¶ 30} In general, the Supreme Court has applied the abuse of discretion standard to decisions of the trial court and a domestic relations matter, see Booth v. Booth (1989), 44 Ohio St. 3d 142. The Supreme Court specifically made the abuse of discretion standard applicable to custody hearings in Miller v. Miller (1988),37 Ohio St. 3d 71. The Supreme Court has often explained the term abuse of discretion implies the *Page 9 
court's actions are unreasonable, arbitrary, or unconscionable, see, e.g., Blakemore Blakemore (1983), 5 Ohio St. 3d 217.
 {¶ 31} Appellant asserts the court did not apply the factors in R.C.3109.051. The statute states in pertinent part:
 {¶ 32} "(D) In determining whether to grant parenting time to a parent pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights to a grandparent, relative, or other person pursuant to this section or section 3109.11 or 3109.12 of the Revised Code, in establishing a specific parenting time or visitation schedule, and in determining other parenting time matters under this section or section 3109.12 of the Revised Code or visitation matters under this section or section 3109.11 or 3109.12 of the Revised Code, the court shall consider all of the following factors:
 {¶ 33} (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;
 {¶ 34} (2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;
 {¶ 35} (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule; *Page 10 
 {¶ 36} (4) The age of the child;
 {¶ 37} (5) The child's adjustment to home, school, and community;
 {¶ 38} (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;
 {¶ 39} (7) The health and safety of the child;
 {¶ 40} (8) The amount of time that will be available for the child to spend with siblings;
 {¶ 41} (9) The mental and physical health of all parties;
 {¶ 42} (10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
 {¶ 43} (11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either *Page 11 
parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 44} (12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 45} (13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 46} (14) Whether either parent has established a residence or is planning to establish a residence outside this state; *Page 12 
 {¶ 47} (15) In relation to requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;
 {¶ 48} (16) Any other factor in the best interest of the child."
 {¶ 49} Although the trial court did not discuss each factor, it did make extensive inquiry into the factor it obviously considered most at issue, namely, which parent would be more likely to respect the other party's relationship with the child.
 {¶ 50} Appellant argues the court's interim order was directly opposite to the recommendation of the guardian ad litem. While appellant is correct in stating at the first hearing the guardian ad litem had expressed concerns over granting appellee sole custody, the record shows at the final hearing, the guardian ad litem believed the child was doing very well under the interim order. Further, the court is not required to adopt the recommendations of the guardian ad litem, but must review the guardian ad litem's report in connection with all the other evidence presented to it, Smith v. Quigg, Fairfield App. No. 2005CA001,2006-Ohio-1494, at paragraph 51.
 {¶ 51} We conclude the trial court did not abuse its discretion in finding the interim order was in the best interest of the child, and adopting it as the final order.
 {¶ 52} The second assignment of error is overruled. *Page 13 
 {¶ 53} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed.
Gwin, P.J., and Edwards, J., concur; Hoffman, J., concurs.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Stark County, Ohio, is affirmed. Costs to appellant. *Page 14